COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LORENA QUIROZ and GARY S. VERNIER, | § | No. 08-12-00163-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | 383rd Judicial District Court |
| v. | § | of El Paso County, Texas |
| RUMMIE LEE GRAY, II, | § | |
| | § | (TC# 2007-AG-2166) |
| Appellee. | § | |

## O P I N I O N

Lorena Quiroz and Gary S. Vernier[1] appeal the trial court's judgment establishing that Rummie Lee Gray, II, is the biological father of R.L.G., a child born to Quiroz while she was married to Vernier. In a single issue, Appellants argue the trial court erred because it lacked subject-matter jurisdiction. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gray began dating Quiroz in October 2002. Unbeknownst to Gray, Quiroz was married to Vernier. Quiroz returned to Vernier after the Thanksgiving holiday and lived with him and their four children until March 2003. During that period, Quiroz and Vernier had sexual relations. For reasons undisclosed in the record, but presumably because she was pregnant, Quiroz resumed

---

[1] For ease of reference, we will refer to Quiroz and Vernier collectively as Appellants unless the context otherwise requires.

her relationship with Gray.

Quiroz informed Gray he was the baby's father. Gray attended several prenatal care events and was present when R.L.G. was born on September 15, 2003. Following R.L.G.'s birth, Gray and Quiroz lived together for three years.[2] During this period, Gray provided financial support for R.L.G. While living together, Gray and Quiroz had hoped to get married, but their relationship soured, and they went their separate ways.

In March 2007, the Office of the Attorney General filed a petition seeking to establish Gray's parentage. Quiroz and Gray were served with copies of the petition, but Vernier was not. Gray requested genetic testing, and the trial court ordered it. In conjunction with his request for genetic testing, Gray applied for services with the Attorney General "to make sure" he was R.L.G.'s father and to "be put on to pay child support . . . for my son." The test results showed that Gray's probability of paternity was 99.99 percent and that the combined paternity index was 14,533,045 to 1.

Quiroz subsequently filed a petition to establish the parent-child relationship identifying Gray as R.L.G.'s father and seeking child support from him and her appointment as sole managing conservator. Gray sought temporary orders, and the trial court granted him supervised visitation with R.L.G. Although the trial court did not formally adjudicate Gray as R.L.G.'s father, the trial court "determine[d] that temporary orders should be granted for father's access to the minor child." Gray then filed an amended answer seeking, *inter alia*, his appointment as a "joint non primary managing conservator . . . ." Quiroz responded by filing a petition to terminate Gray's parental rights. The trial court eventually dismissed the petitions filed by the Attorney General

---

[2] Quiroz and Vernier divorced approximately one year after R.L.G.'s birth.

and Quiroz, but reinstated Quiroz's petitions upon her motion.[3]   The record, however, does not reveal if the trial court dismissed Gray's request for his appointment as managing conservator. There is no indication that the trial court did or that it ever acted upon the request.   In November 2010, Gray responded to Quiroz's petition to terminate his parental rights by seeking to establish his parentage.   In January 2011, Quiroz moved to dismiss Gray's petition, alleging for the first time that Gray was not R.L.G.'s father and that Vernier was R.L.G.'s presumed father.   Quiroz then filed a brief in support of her motion to dismiss to which she attached an affidavit executed by Vernier.   In his affidavit, Vernier averred he was married to Quiroz when R.L.G. was born and that he and Quiroz engaged in sexual intercourse frequently during the period when R.L.G. could have been conceived.   The trial court denied Quiroz's motion to dismiss.

In April 2011, Vernier filed a petition to intervene, alleging he was R.L.G.'s presumed father.   Vernier requested that Gray's paternity suit be dismissed on the basis it was filed more than four years after R.L.G.'s birth and thus barred by Section 160.607 of the Texas Family Code. In support of his petition, Vernier submitted the same affidavit that Quiroz had relied on previously.

The trial court denied Vernier's motion to intervene.   Following a *de novo* hearing, the trial court adjudicated Gray as R.L.G.'s father.

## MULTIFARIOUS ISSUE

In their sole issue, Appellants contend "[t]he [t]rial [c]ourt abused its discretion in denying . . . Vernier's Motion in Intervention and Plea to the Jurisdiction and further erred in all findings and conclusions that he is not the presumed father, as said presumption was not properly rebutted,

---

[3] Neither the orders dismissing Quiroz's petitions nor the order reinstating them are in the record brought on appeal. However, no party has complained of their absence from the record, and they are not central to resolving the appeal.

nor was the suit timely filed." Gray asserts we should disregard Appellants' issue because they combined, "at a minimum, three different points of error" within a single issue, rendering it multifarious. There is no question Appellants have combined complaints based on more than one legal theory within a single issue, and, consequently, brought forth a multifarious issue on appeal. *See City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 555 n.2 (Tex.App.--San Antonio 1993, writ denied)(an issue embracing more than one specific ground of error is multifarious). By doing so, Appellants risk rejection on the basis they have presented nothing for review. *See id*. (multifarious points of error may be disregarded). An appellate court, however, has the discretion to consider a multifarious issue provided it can determine, with reasonable certainty, the alleged error about which the complaint is made. *Thornton v. D.F.W. Christian Television, Inc.*, 925 S.W.2d 17, 22-3 (Tex.App.--Dallas 1995), *rev'd on other grounds*, 933 S.W.2d 488 (Tex. 1996). Because we can make that determination here, we will—in the interest of justice—consider the complaints raised by Appellants. *See id*.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In each of their complaints, Appellants assert the trial court "erred in all findings and conclusions to the contrary." However, Appellants fail to identify any particular finding that they claim is palpably contrary to the evidence. Nor do they specifically identify any conclusion that they allege is erroneous. Generally, an attack on the sufficiency of the evidence must be directed at specific findings of fact rather than at the judgment as a whole. *In re M.S.F.*, 383 S.W.3d 712, 716 (Tex.App.--Amarillo 2012, no pet.). Unchallenged findings are binding upon the appellate court. *Id*. However, unidentified findings of fact may be reviewed on appeal if the appellate court can fairly determine from the argument the specific finding of fact that is being challenged.

4

*In re M.S.F.*, 383 S.W.3d at 716. Because we can fairly determine from Appellants' argument the specific findings being challenged, we will address each of their complaints.

As best we can discern, Appellants challenge the following findings of fact and conclusions of law:

> 5.) The Court finds that on June 1, 2007, the 383rd District Court ordered … Quiroz, the child the subject of this suit, and . . . Gray . . . to submit to a parentage test.

> 6.) The Court finds that on June 14, 2007, LabCorp found that . . . Gary . . . had a 'probability [of] [] paternity of 99.99%, as compared to an untested, unrelated man of the [] population' to [R.L.G.], said DNA results were filed with the Court on July 12, 2007, and made part of the Court record for all purposes.

> .      .      .

> 20.) The Court finds that from *May 24, 2007* to *February 15, 2011* . . . Gray . . . filed a multitude of Petitions and Motions which attempted to establish paternity

> .      .      .

> 21.) The Court finds that for four years . . . Quiroz and . . . Gray . . . tried the issue of paternity by consent.

> 22.) The Court finds that . . . Gray . . . exercised due diligence in attempting to adjudicate paternity . . . .

> .      .      .

> 25.) The Court finds that after four years of litigating the issue of paternity by consent . . . Quiroz unreasonably delayed asserting the affirmative defense of statute of limitations.

> 26.) The Court finds that after . . . Quiroz's unreasonable delay in asserting her defense . . . Gray . . . was forced to change his position in good faith and plead for a Request for Paternity on November 12, 2010.

> .      .      .

> 33.) The Court finds that the purpose behind TEX.FAM.CODE ANN. § 160.607, entitled Time Limitation: Child Having Presumed Father is to ensure that after the

fourth anniversary of the child's birth, the child and his family unit are afforded stability.

34.) The Court finds that . . . Quiroz, in contravention to TEX.FAM.CODE ANN. § 160.607's purpose, attempted to sever the child's stable relationship with his biological father. In essence, she wished to acquire a termination of parental rights through the affirmative defense of statute of limitations.

.                    .                    .

1.) The Court concludes in compliance with TEX.FAM.CODE ANN. § 160.505 that . . . Gray . . . was rebuttably identified as the father of the child the subject of this suit under the Uniform Parentage Act.

2.) The Court concludes that . . . Gray['s] . . . genetic test results are admissible because they were performed under court order in compliance with TEX.FAM.CODE ANN. § 160.502. See TEX.FAM.CODE ANN. § 160.621(a)(2).

3.) The Court concludes that the paternity of a child having a presumed, acknowledged, or adjudicated father may be disproved by admissible results of genetic testing. The man identified as the father of the child under TEX.FAM.CODE ANN. § 160.505 **shall** be adjudicated as the father of the child. TEX.FAM.CODE ANN. § 160.631.

4.) The Court concludes that in compliance with TEX.FAM.CODE ANN. § 160.607, a proceeding was commenced no later than the fourth anniversary of [R.L.G.]'s date of birth to adjudicate his parentage. See TEX.FAM.CODE ANN. § 160.607.

.                    .                    .

6.) The Court also concludes it would be inequitable to allow . . . Quiroz to manipulate the rules of pleading to wrongfully obtain a termination of parental rights. . . . Quiroz on multiple occasions led the Court, as well as . . . Gray . . . to believe that the issue of paternity was being tried by consent. After four years of litigation . . . Quiroz unreasonably delayed asserting the affirmative defense of limitations. Therefore . . . Quiroz is barred by the equitable doctrines of laches, judicial estoppel, and unclean hands, to assert the affirmative defense of limitations.

.                    .                    .

9.) The Court concludes, as mandated by Chapter 160 of the Texas Family Code, that it is appropriate and in the best interest of the child that . . . Gray . . . be adjudicated as [R.L.G.]'s father. [Emphasis in orig.].

6

In our review of each of Appellants' specific complaints, we find the evidence is legally and factually sufficient to support the trial court's findings supporting Gray's rebuttable identification as R.L.G.'s father, and these findings are sufficient to support the judgment adjudicating Gray to be R.L.G.'s father. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)(a trial court's findings of fact are reviewed for both legal and factual sufficiency); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)(a finding is legally sufficient if there is more than a scintilla of evidence to support the finding); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)(per curiam)(a finding is factually insufficient if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust).

## INTERVENTION

Appellants maintain the trial court erred by denying Vernier's motion to intervene in Gray's paternity suit. We disagree.

### *Standard of Review*

We review the trial court's decision for abuse of discretion. *Segovia-Slape v. Paxson*, 893 S.W.2d 694, 696 (Tex.App.--El Paso 1995, orig. proceeding). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

### *Applicable Law*

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX.R.CIV.P. 60. To intervene successfully, a

7

party must generally show that he has standing to maintain an original suit. *Segovia-Slape*, 893 S.W.2d at 696. However, a party need not make such a showing in a suit affecting the parent-child relationship (SAPCR). *Id.* To intervene successfully in a SAPCR, a party only needs to demonstrate sufficient interest in the child the subject of the suit even if he cannot institute an original SAPCR in his own right. *Id.* "[T]his relaxed standing rule promotes the overriding policy in all SAPCR suits, that of protecting the best interest of the child." *Id.*, (internal citations omitted).

That said, intervention in a SAPRC is appropriate only upon a proper factual showing. *Id*. In determining whether the party has met that burden, the trial court should consider the factual allegations in the motion to intervene on which the right to intervene is predicated and those set forth in the pleadings of the other parties. *Id*. The trial court should also consider any evidence on the issue adduced by the parties. *Id*. Moreover, a party seeking to intervene in a SAPCR must do so in a timely manner. *In re Northrop*, 305 S.W.3d 172, 175-78 (Tex.App.--Houston [1st Dist.] 2009, orig. proceeding). If a party fails to intervene timely and offers no evidence to justify the late intervention, the trial court will not be held to have abused its discretion in striking the intervention. *Id*.

### *Discussion*

The trial court did not abuse its discretion by striking Vernier's plea in intervention.[4]

First, Vernier did not demonstrate he had a sufficient interest in R.L.G. to permit intervention.

---

[4] Although Gray did not file a motion to strike, Vernier's intervention was tried by consent. An issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating that both parties understood the issue existed in the case, and the other party fails to make an appropriate complaint. TEX.R.CIV.P. 67; *see Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex.App.--Houston [14th Dist.] 2003, no pet.). To determine whether an issue was tried by consent, the reviewing court must examine the record for evidence of trial of the issue. *Hoggett v. Brown*, 971 S.W.2d 472, 483 n.4 (Tex.App.--Houston [14th Dist.] 1997, pet. denied)). Here, the record establishes that Vernier's intervention was litigated at several hearings and that Vernier has not complained of Gray's failure to file a motion to strike his intervention.

Vernier alleged in his plea he was R.L.G.'s presumed father and averred in his supporting affidavit he was married to Quiroz when R.L.G. was born and that he and Quiroz engaged in sexual intercourse weekly during the period when R.L.G. was conceived. Vernier, however, offered no evidence in support of his plea. Instead, he chose to rely solely on his affidavit. But Vernier's averments are belied by the genetic test conclusively establishing Gray's paternity of R.L.G. That test has been on file with the trial court since June 2007, and Appellants have never challenged its validity. Further, there is no indication Vernier has ever been involved in R.L.G.'s life, and Vernier does not allege, much less aver, he has been. Indeed, Vernier did not attend any of the hearings in this matter.

Second, Vernier did not seek to intervene in a timely manner and failed to offer any evidence to justify his late intervention. R.L.G. was born in September 2003, and proceedings in this case commenced in March 2007. Vernier, however, did not file his plea in intervention until April 2011, approximately one month before the associate judge presided over the final hearing in this matter. Moreover, there is no indication Vernier became involved in this case until February 2011, and Vernier offered no evidence to the contrary at the hearings at which his plea was considered. Nor did Vernier adduce any evidence to justify his late intervention. As mentioned above, Vernier relied solely on his affidavit to seek intervention, and nowhere in his affidavit does Vernier attempt to explain his late intervention.

Appellants acknowledge Vernier is "coming to the party late," but argue he is permitted to intervene because: (1) he could have brought the same action in his name; (2) his intervention would not have complicated the case; and (3) his intervention was essential to protect his legal and equitable interests. *See Guaranty Federal Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d

9

652, 657 (Tex. 1990)(stating a trial court abuses its discretion in striking a plea in intervention in civil suit if intervenor satisfies all three factors). Vernier was only permitted to intervene upon a proper factual showing he had a sufficient interest—legal or equitable—in R.L.G. *See Segovia-Slape*, 893 S.W.2d at 696. As shown above, Vernier failed to discharge his burden. Vernier did not adduce evidence establishing he had a legal interest in R.L.G. after genetic testing rebuttably identified Gray as R.L.G's father and mandated that Gray be adjudicated R.L.G.'s father. *See* TEX.FAM.CODE ANN. § 160.505(a)(West 2014)(a man is rebuttably identified as a child's father if genetic testing shows at least a 99 percent probability of paternity and a combined paternity index of at least 100 to 1); TEX.FAM.CODE ANN. § 160.631(c)("Unless the results of genetic testing are admitted to rebut other results of genetic testing, the man identified as the father of a child under Section 160.505 shall be adjudicated as being the father of the child."). Nor did Vernier adduce evidence establishing he had an equitable interest in R.L.G. Vernier failed to explain his late intervention, and there is no evidence in the record that Vernier was ever involved in R.L.G.'s life.

## STANDING

Appellants complain that the trial court erred in denying Vernier's plea to the jurisdiction because Gray lacked standing to prosecute his paternity suit. Specifically, Appellants argue Gray's paternity suit was procedurally barred under Section 160.607 of the Texas Family Code because it was filed more than four years after R.L.G.'s birth. We disagree.

### *Applicable Law*

A proceeding to establish parentage on behalf of a child with a presumed father must be commenced no later than the child's fourth birthday. TEX.FAM.CODE ANN. § 160.607(a)(West

10

2014). However, a party in a paternity action may be equitably estopped from relying on an otherwise applicable statutory bar to recovery. *See Hausman v. Hausman*, 199 S.W.3d 38, 42-3 (Tex.App.--San Antonio 2006, no pet.)(applying equitable estoppel to preclude mother from denying that presumed father's parentage even though he was not the biological father); *In re Shockley*, 123 S.W.3d 642, 651-53 (Tex.App.--El Paso 2003, no pet.)(applying equitable estoppel to preclude mother from denying psychological father's parentage even though he was neither a presumed nor biological father).

Equitable estoppel may arise if five factors are satisfied: (1) there was a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) to a party without knowledge, or the means of knowledge, of those facts; (4) with the intention that it be acted upon; and (5) the party to whom it was made must have relied on the misrepresentation to his prejudice. *In re Shockley*, 123 S.W.3d at 653. In applying the doctrine of equitable estoppel in a paternity action, we explained:

> The application of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child. Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father [he] has known all [his] life is not in fact [his] father. In determining whether the doctrine should be applied to a particular case, the child's best interests are of paramount concern. To that end, the courts are more inclined to impose equitable estoppel to protect the status of a child in an already recognized and operative parent-child relationship. (Internal quotes and citations omitted).

*In re Shockley,* 123 S.W.3d at 651-52.

### Discussion

The trial court did not err in failing to dismiss Gray's paternity action because the

11

doctrine of equitable estoppel precluded Appellants from relying on limitations as a defense.[5]   In their arguments on appeal, Appellants do not address the application of equitable estoppel in this case.   Consequently, they do not contend that they were not equitably estopped from relying on limitations as a defense.   Even had Appellants so contended, they would have been mistaken.

The record establishes that Gray always believed he was R.L.G.'s father and, until approximately February 2011, Quiroz regarded Gray to be R.L.G.'s father.   Gray testified that Quiroz told him he was R.L.G.'s father "from the beginning[,]" that he knew he was R.L.G.'s father, and that he never disavowed being R.L.G.'s father.   According to Gray, Quiroz never disputed his paternity until February 2011.   Up to then, Quiroz had consistently identified Gray as R.L.G.'s father in her pleadings and, as acknowledged by her counsel, sought to terminate Gray's parental rights "[d]uring the course of this litigation[.]"

The record also establishes that Gray and R.L.G. are in a recognized and operative parent-child relationship.   Gray testified he developed a strong bond with R.L.G. during the three years he lived with Quiroz.   Gray further testified he provided financial support for R.L.G. from 2003 to 2006 and began doing so again in September 2010.   According to Gray, he did not provide financial support for R.L.G. from 2007 to August 2010 because he was not ordered to do so and because he did not know the whereabouts of R.L.G. and Quiroz.   Gray further testified that, in March 2011, he obtained standard visitation rights and was exercising those rights.   According to Gray, he and R.L.G. "bonded" during their visits.   Gray also testified he was

---

[5] In its findings of fact and conclusions of law, the trial court did not identify equitable estoppel as a basis for precluding Appellants from relying on limitations to deny that Gray was R.L.G.'s father.   However, we are not bound by the trial court's legal conclusions.   *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).   So long as the judgment can be sustained on any legal theory supported by the evidence, it will be upheld on appeal.   *Id.* Here, the legal theory of equitable estoppel as a basis for precluding Appellants from denying Gray's parentage was raised by Gray at trial.   In his brief in support of his response to Quiroz's "Motion to Dismiss For Lack of Standing[,]" Gray asserted, "[c]learly, the past conduct of [Quiroz] would satisfy the elements of equitable estoppel and preclude her from the relief she is now seeking."   As shown below, the evidence adduced at trial corroborates Gray's assertion.

providing health insurance for R.L.G. and was seeking his appointment as joint managing conservator.

The record likewise establishes that Quiroz represented to Gray that he was R.L.G.'s father while concealing the material fact that she was married to Vernier and engaging in sexual intercourse with him, during the time frame in which she became pregnant. As noted above, Quiroz informed Gray he was R.L.G.'s father, but never told him that she was married to Vernier and had moved back in with him. Quiroz admitted that, during the probable time of R.L.G.'s conception, she lived with Vernier and engaged in sexual relations with him. Quiroz, however, never raised the possibility of Gray not being R.L.G's father until approximately February 2011. From the foregoing evidence, the trial court could have concluded that Quiroz knowingly concealed from Gray the fact that she had sexual relations with another man who possibly was R.L.G.'s father.

The record further demonstrates Gray did not know that Quiroz had engaged in relations with another man or that R.L.G. was possibly another man's son. At a motions hearing held on February 14, 2011, Gray testified he had recently learned Quiroz had been married to Vernier. The record likewise establishes that the trial court could have inferred that Quiroz intended for Gray to rely on her representations and concealment of material facts and that Gray relied on Quiroz's representations and concealment of material facts. At the onset of their relationship, Quiroz encouraged Gray to participate in R.L.G.'s life as his father. Gray attended prenatal care, bonded with R.L.G., and provided financial support for him. Although Quiroz later sought to terminate Gray's parental rights, she never raised the issue that another man could possibly be R.L.G.'s father. Given this and the conclusive results of the paternity test, Gray had no reason to

13

seek adjudication of his parentage in a timely manner.

## ADJUDICATION OF PARENTAGE

Appellants claim Vernier's status as R.L.G.'s presumed father has never been properly rebutted by an adjudication of parentage rendered under Subchapter G of Chapter 160 of the Texas Family Code.[6]   We disagree.

### *Applicable Law*

A presumption of paternity exists if a man is married to the mother of the child and the child is born before the 301st day after the day the marriage was terminated by divorce.   TEX. FAM. CODE ANN. § 160.204(a)(2)(West 2014).   This presumption legally establishes the father-child relationship between the man and child.   TEX.FAM.CODE ANN. § 160.201(b)(1).   By operation of law, a "presumed father" is "recognized as the father of the child until that status is rebutted or confirmed in a judicial proceeding."   TEX.FAM.CODE ANN. § 160.102(13).

The presumption of paternity may be rebutted only by:   (1) an adjudication of parentage under Subchapter G; or (2) the filing of a valid denial of paternity by the presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity. TEX.FAM.CODE ANN. § 160.204(b).   An alleged father cannot request, and the trial court cannot grant, an order for genetic testing unless he is entitled to maintain a proceeding to adjudicate parentage as set out in Subchapter G.   *In re Rodriguez*, 248 S.W.3d 444, 450-51 (Tex.App.--Dallas 2008, orig. proceeding).   A man is rebuttably identified as a child's father if genetic testing shows at least a 99 percent probability of paternity and a combined paternity index of at least 100 to 1.   TEX.FAM.CODE ANN. § 160.505(a).   "Unless the results of genetic testing are

---

[6] We note that the trial court made no specific findings of fact and conclusions of law addressing Vernier's status as R.L.G.'s presumed father, and Appellants did not request the trial court to amend or supplement its findings and conclusions to address that issue.

14

admitted to rebut other results of genetic testing, the man identified as the father of a child under Section 160.505 shall be adjudicated as being the father of the child." TEX.FAM.CODE ANN. § 160.631(c).

### *Discussion*

The trial court did not err in adjudicating Gray to be R.L.G.'s father. The appellate record contains the trial court's order and the genetic test results, and Appellants have not challenged the validity of the test results. As recited above, the test results showed that Gray's probability of paternity was 99.99 percent and that the combined paternity index was 14,533,045 to 1. These results rebuttably identified Gray as R.L.G's father. *See* TEX.FAM.CODE ANN. § 160.505(a). Because Appellants did not adduce any evidence contradicting the genetic test results, the trial court was compelled to adjudicate Gray as R.L.G.'s father. *See* TEX.FAM.CODE ANN. § 160.631. At that moment, Vernier's status as R.L.G.'s presumed father was nullified by operation of law.[7] *See* TEX.FAM.CODE ANN. §§ 160.102(13), 160.204(b).

Appellants assert that, for two reasons, a valid adjudication of parentage under Subchapter G has not occurred. Neither reason is persuasive, however.

First, Appellants argue no valid adjudication occurred because Vernier was a necessary party to the parentage proceeding under Section 160.603 of the Texas Family Code. But a presumed father is not a necessary party under Section 160.603. *See* TEX.FAM.CODE ANN. § 160.603 (West 2014)(identifying "the mother of the child" and "a man whose paternity of the

---

[7] Given this conclusion, we need not address Appellants' alternate argument that "[i]n the event this Court determines Gray was timely in filing his petition, . . . [Gray] nevertheless failed to prove that (1) Vernier and Quiroz did not live together or engage in sexual intercourse with each other during the probable time of conception and (2) Vernier never represented to others that the child was his own." *See* TEX.FAM.CODE ANN. § 160.607(b)(a proceeding seeking to disprove the father-child relationship between a child and the child's presumed father is not barred by the statute of limitations if the evidence establishes the two elements identified in the statute).

15

child is to be adjudicated" as the two necessary parties); *Frazer v. Hall*, No. 01-11-00505-CV, 2012 WL 2159271, *2 (Tex.App.--Houston [1st Dist.] June 14, 2012, no pet.)(mem. op.)("The Uniform Parentage Act provides that the necessary parties in a proceeding to adjudicate parentage are the mother of the child and the man whose paternity of the child is to be adjudicated."); *see also* TEX.FAM.CODE ANN. § 160.612(a)(stating a minor is a permissible, but not a necessary, party). Further, Appellants cite no authority holding that a presumed father is a necessary party to a proceeding to adjudicate parentage.

Second, Appellants contend no valid adjudication took place "[b]ecause the trial court dismissed the previously filed actions . . . ." Although it is undisputed that Gray filed a petition to adjudicate parentage in November 2010. Gray filed his petition more than four years after R.L.G.'s birth, nonetheless, we have concluded Appellants are equitably estopped from relying on limitations to deny that Gray is R.L.G.'s father. Because Gray commenced a proceeding to adjudicate his parentage and proved he was R.L.G.'s father, the trial court did not err in adjudicating him to be R.L.G.'s father.

## CONCLUSION

Appellants' issue is overruled, and the trial court's judgment is affirmed.


April 25, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.


16