

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00012-CV

**IN RE J.H.** and C.H.

Original Mandamus Proceeding[1]

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: March 4, 2020

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relators, who are the foster parents of the child L.S.R., assert the trial court abused its discretion by denying their motion to strike a petition in intervention filed by the real parties in interest (the "RPIs"). We agree and conditionally grant relators' petition for writ of mandamus.

### BACKGROUND

L.S.R. was born on July 28, 2018; placed with relators when he was less than one week old; and has lived with relators ever since. On July 31, 2018, the Department of Family and Protective Services (the "Department") filed a petition for conservatorship of L.S.R. and to terminate the parental rights of L.S.R.'s mother and unknown father.

---

[1] This proceeding arises out of Cause No. 2018-PA-01669, styled *In the Interest of L.S.R., a Child*, pending in the 131st Judicial District Court, Bexar County, Texas, the Honorable Martha Tanner presiding.

In December 2018, the RPIs first learned about L.S.R.'s birth through a Facebook posting by the child's mother. The RPIs are the child's maternal second cousin ("Amy") and her husband ("John"). In May 2019, Amy reached out to the Department and was told she and John should attempt to be licensed as foster parents. In July 2019, the RPIs were told they did not qualify as foster parents due to a criminal incident from John's past.

On August 1, 2019, relators—the foster parents—filed a petition in intervention asking that they be appointed sole managing conservators or joint managing conservators of the child. Four days later, the RPIs filed a petition in intervention asking that they be appointed joint managing conservators of the child. The RPIs contended they were a "maternal blood relative within the third consanguinity" and they had standing under Family Code section 102.004. Relators then filed an objection and motion to strike the RPIs' pleadings. Following a September 13, 2019 hearing, the trial court denied relators' motion to strike. Relators filed their petition for writ of mandamus and the RPIs responded.[2]

## ENTITLEMENT TO MANDAMUS RELIEF

Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion when there is no other adequate remedy at law. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 623 (Tex. 2007) (orig. proceeding). "An order denying a motion to dismiss for lack of standing in a suit affecting the parent-child relationship is not appealable; therefore, mandamus relief is an appropriate remedy." *In re Schick*, 04-18-00839-CV, 2018 WL 6624380, at *2 (Tex. App.—San Antonio Dec. 19, 2018, orig. proceeding) (mem. op).

As a preliminary matter, the RPIs assert relators waived their right to seek mandamus relief by waiting several months to file their petition for writ of mandamus. Although mandamus is not

---

[2] After the petition for writ of mandamus was filed, L.S.R.'s mother's and unknown father's parental rights were terminated.

an equitable remedy, its issuance is largely controlled by equitable principles, including the principle that equity aids the diligent and not those who slumber on their rights. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding). To invoke the equitable doctrine of laches, the moving party ordinarily must show (1) unreasonable delay; and (2) a good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam).

Here, the trial court signed the order denying relators' motion to strike on October 28, 2019. Relators filed their petition for writ of mandamus on January 8, 2020. Considering the intervening holidays, we do not consider a slightly more than two month delay unreasonable. Also, the RPIs do not contend they have made a good faith and detrimental change in position because of the delay.

## STANDING

In their petition in intervention, the RPIs contended they had standing because they were related to L.S.R. within the third degree by consanguinity. Family Code section 102.004(a) allows "another relative of the child related within the third degree by consanguinity, [to] file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:"

> (1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or
> (2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

TEX. FAM. CODE § 102.004(a).

This section applies to the filing of an original suit, which the RPIs did not do. Instead, they sought to intervene in a suit filed by the Department claiming they were related to L.S.R. within the third degree by consanguinity. However, Amy is L.S.R.'s mother's cousin and L.S.R.'s second cousin; therefore, Amy and the child are not related within the third degree by

- 3 -

consanguinity. *See* TEX. GOV'T CODE § 573.023 ("Computation of Degree of Consanguinity"); *see also In re A.V.*, 350 S.W.3d 317, 321 (Tex. App.—San Antonio 2011, no pet.) (presiding judge and Department's caseworker were second cousins and not related by consanguinity within the third degree).

At the hearing, the RPIs relied on *Quiroz v. Gray*, 441 S.W.3d 588 (Tex. App.—El Paso 2014, no pet.), to argue they only had to demonstrate a "sufficient interest" in the child. The *Quiroz* court held that "[t]o intervene successfully in a SAPCR, a party only needs to demonstrate sufficient interest in the child the subject of the suit even if he cannot institute an original SAPCR in his own right." *Id.* at 594. However, the *Quiroz* holding conflicts with the clear language of Family Code section 102.004(b), which provides that

> the court may grant a grandparent or other person, subject to the requirements of Subsection (b-1) if applicable, *deemed by the court to have had substantial past contact* with the child leave to intervene in a pending suit filed by a person authorized to do so under this chapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

TEX. FAM. CODE § 102.004(b) (emphasis added).

"The 'substantial past contact' standard is not defined by statute or caselaw." *Schick*, 2018 WL 6624380, at *4. "Substantial" is defined as "of ample or considerable amount, quantity, size, etc." *Id.* (citations omitted). "Our inquiry is fact-intensive and should focus on the amount of actual contact the child had with the adult." *Id.* Here, Amy testified she visited only once with L.S.R. and never requested additional visits, and John testified he had never visited with the child.[3]

---

[3] In their response to the petition for writ of mandamus, the RPIs contend they have had weekly unsupervised visitation with L.S.R. since October 14, 2019. However, the RPIs had the burden to show that the facts establishing standing existed at the time their petition in intervention was filed in the trial court. *Schick*, 2018 WL 6624380, at *4. Because the RPIs filed their initial petition on August 5, 2019, their standing to intervene is measured at that time. *Id.* The hearing occurred on September 13, 2019.

Based on this record, the RPIs did not carry their burden to show substantial past contact sufficient to confer standing. *See id.* at \*6 (holding same although intervenors had three in-person visits with the child, each visit lasting an hour to an hour and a half; and weekly thirty-minute Skype telephone calls from April 2018 to July 2018).

The RPIs also assert they have standing under section 102.003(a)(14) because L.S.R.'s mother signed a "Statement to Confer Standing." Under section 102.003(a), "[a]n original suit may be filed at any time by . . . a person who has been named as a prospective adoptive parent of a child by a pregnant woman or the parent of the child, in a verified written statement to confer standing executed under Section 102.0035, regardless of whether the child has been born . . . ." TEX. FAM. CODE § 102.003(a)(14). We are not persuaded by the RPIs' argument. First, as stated above, section 102.003 applies to the filing of an original suit, which the RPIs did not file. Second, "[a] statement to confer standing under this section may not be executed in a suit brought by a governmental entity under Chapter 262 or 263." *Id.* § 102.0035(a). The underlying suit was brought by the Department under Chapter 262. Finally, the "Statement to Confer Standing" signed by L.S.R.'s mother does not satisfy the requirements of section 102.0035 because (1) it does not state the age of the mother or the RPIs, (2) is not signed by the RPIs, and (3) was not attached to any petition in a suit affecting the parent-child relationship because no such suit was filed. *See id.* § 102.0035(b)(1-2), (c).

## CONCLUSION

For the reasons stated above, we conclude the trial court abused its discretion by denying relators' motion to strike. We therefore conditionally grant the petition for writ of mandamus and order the trial court to (1) vacate its October 28, 2019 "Order on Motion to Strike Intervenors' Pleadings," (2) grant relators' motion to strike, and (3) dismiss the RPIs' petition in intervention

for lack of jurisdiction.  The writ of mandamus will issue only if the trial court fails to comply within fifteen days from the date of our opinion.

Sandee Bryan Marion, Chief Justice