

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-22-00070-CV |
| IN THE INTEREST OF | § | Appeal from the |
| C.G.P. and G.L.P., | § | 51st Judicial District Court |
| Children. | § | of Tom Green County, Texas |
| | § | (TC# A-19-0425-AG) |

## MEMORANDUM OPINION[1]

Appellant Destiny Jordan Ferguson (Mother) appeals from the trial court's final order in a suit to modify the parent-child relationship brought by Appellee Dustin Lee Polk (Father). Mother brings four issues on appeal. For the following reasons, we affirm.

### I. BACKGROUND

Father and Mother are the parents of twin boys, C.G.P. and G.L.P., who were born in June 2018.[2] On January 14, 2020, the 51st Judicial District Court rendered an order in a suit affecting

---

[1] We hear this case on transfer from the Third Court of Appeals in Austin and apply that court's precedent as required by TEX. R. APP. P. 41.3.

[2] To protect the identity of the minor children, we identify them by their initials only. *See* TEX. FAM. CODE ANN. §109.002(d).

the parent-child relationship as between Father, Mother, and their twin boys. Although Mother and Father were both appointed joint managing conservators of the children, Mother was designated as the conservator with the exclusive right to designate their primary residence without regard to geographic location. Mother was also designated the conservator with the right to consent to invasive medical treatments, if any. Due to the age of the children, as well as the circumstances of the parties, Father was awarded a modified standard possession order from February to June 2020. The order required Father to complete a series of visits until the boys reached the age of two years old. Once these conditions were met, the standard possession order then applied. Finally, Father was ordered to pay $389 in child support each month.

A year later, Father filed a petition to modify the order of January 14, 2020. Father alleged there had been a material and substantial change of circumstances since rendition of the prior order. To his petition, he attached a supporting affidavit wherein he testified about incidents that had caused him grave concern for the children's physical health and emotional safety. Among other modifications, Father requested he be appointed as the person with the exclusive right to designate the primary residence of the children and for Mother's possession and access to be modified. Specifically, Father requested that Mother be ordered not to leave the children alone with any person under the age of eighteen, and that she be ordered to not allow or cause the children to have contact with her brother and nephew. Lastly, Father requested that support payments previously ordered should be terminated, and Mother should be ordered to pay support.

Mother filed an original answer generally denying all allegations. Additionally, she filed a counterpetition where she asserted that no circumstances of the children, or of a conservator, or other party affected by the order to be modified, had materially or substantially changed as to conservatorship, or as to access and possession; but she otherwise contended that circumstances

had materially and substantially changed regarding support payments previously ordered by the court. As a modification, Mother requested Father be ordered to pay an increased amount of child support.

The trial court held a hearing regarding temporary orders on March 1, 2021. Our record, however, does not include a written order following that hearing. But, during the final hearing, Father admitted the previous hearing transcript as an exhibit, making it part of the record. At the conclusion of the temporary orders hearing, the trial court appointed Father as the conservator with the exclusive right to designate the children's primary residence as well as the conservator with the exclusive right to make medical decisions regarding the children. The temporary order also awarded Mother access and possession pursuant to the standard possession order.[3]

The trial court held a final hearing over five settings spanning from July through November 2021. In total, seven witnesses testified to include Mother, Father, one of the children's teachers, Father's mother, Father's girlfriend, Mother's boyfriend, and a friend of Mother's. From both sides, the trial court also received over 70 exhibits to include the children's medical records, text messages between the parties, and multiple photographs depicting the children with each parent.

Following the hearing, the trial court entered a final order modifying the prior order of January 2020. The trial court made an initial finding that material allegations in Father's petition to modify were true and the requested modification of the prior order was in the best interest of the children. As before, however, the trial court appointed Mother and Father as joint managing conservators of the children. Also, no provision either addressed or appointed either parent as the primary conservator with the right to designate the children's primary residence. Contrary to the

---

[3] On March 9, 2021, prior to the final modification hearing, Mother obtained a temporary restraining order whereby Father was temporarily restrained from immunizing the children. On March 17, 2021, the trial court signed an order extending the temporary restraining order. The order indicated the temporary restraining order would remain in force and effect until the trial court held a hearing on the issue of immunizing the children.

earlier order, however, the trial court did order that neither parent could remove the children from Tom Green County for the purpose of changing their primary residence. Additionally, the trial court made specific findings that modified each parent's rights to make medical decisions for the children, the right to make educational decisions, the right to make decisions as to moral and religious training, and the right to reprimand or punish the children. Similarly, the trial court modified the standard possession order to award each parent an alternating weekly schedule. Lastly, departing from the earlier order, the trial court ordered that neither parent would be obligated to pay child support.

Mother filed a motion for new trial which was overruled by operation of law. This appeal followed.

## II. STANDARD OF REVIEW

In family law cases, issues involving conservatorship are reviewed under the abuse of discretion standard. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982)). "A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

Determining whether the trial court abused its discretion involves a two-pronged inquiry: first, whether the trial court had sufficient information upon which to exercise its discretion, and second, whether the trial court erred in its application of discretion. *Zeifman*, 212 S.W.3d at 588. Sufficiency challenges are factors relevant to whether the trial court abused its discretion rather than as independent grounds of error. *In re J.R.D.*, 169 S.W.3d at 743. We view the evidence in the light favorable to the trial court's decision, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *See City*

4

*of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If there is evidence of substantive and probative character supporting a trial court's decision, we cannot conclude on review that the court abused its discretion in reaching its decision. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.— Austin 2002, no pet.).

## III. DISCUSSION

Mother brings four issues on appeal. Her first issue contends the trial court abused its discretion in finding a material and substantial change in circumstances warranted a modification of the prior order. Proceeding out of order, her second and fourth issues both challenge the trial court's rulings regarding the children's primary residence. Specifically, her second issue contends the trial court abused its discretion in geographically restricting the children's residence to Tom Green County; while her fourth issue argues it erred in *not* designating either parent as the conservator with the exclusive right to designate the children's primary residence. Finally, her third issue argues the trial court abused its discretion in removing her designation as the conservator with the exclusive right to make medical decisions regarding invasive medical procedures.

We address each issue in turn.

## A. The material and substantial change in circumstances finding

In her first issue, Mother asserts the trial court abused its discretion in finding Father established a material and substantial change in circumstances warranting a modification of the prior order of January 2020. Mother challenges the trial court's finding to the extent it supported a modification of conservatorship, terms of possession and access, and child support.

The trial court may modify a previously entered order if there has been a material and substantial change in circumstances since the prior order and the modification would be in the best

interest of the child. *See* TEX. FAM. CODE ANN. § 156.101(a); *In re M.G.N.*, 491 S.W.3d 386, 405 (Tex. App.—San Antonio 2016, pet. denied). "The party seeking modification bears the burden to establish these elements by a preponderance of the evidence." *Interest of A.N.G.*, 631 S.W.3d 471, 479 (Tex. App.—El Paso 2021, no pet.). To prove a material and substantial change in circumstances since the prior order, the movant must show what conditions existed at the time the prior order was entered and what material conditions have changed in the intervening period. *In re T.W.E.*, 217 S.W.3d 557, 559–60 (Tex. App.—San Antonio 2006, no pet.). Whether a material and substantial change occurred is a fact-specific determination that is not controlled by rigid or definite rules. *Id.* at 559.

In determining a child's best interest, a court may use the non-exhaustive list of the so-called Holley factors, as set forth in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). Those factors include: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child, (7) the stability of the home, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* at 371–72. In the context of custody modification, other factors to be considered include the child's need for stability and the need to prevent constant litigation in child-custody cases. *See In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *see also Zeifman*, 212 S.W.3d at 595. Here, Mother's first issue only contests the trial court's finding that Father established a material and substantial change since the prior order.

Relative to the parties' circumstances, the trial court heard extensive testimony from Mother and Father. Additionally, the parties admitted into evidence, and the trial court viewed,

6

numerous exhibits. The exhibits included multiple text messages and other communications exchanged between Mother and Father. It also reviewed hundreds of pages of the children's medical records. Specifically, the trial court received evidence concerning the children's medical care, Mother and Father's current living situation, their relationships with others, their work responsibilities, and disagreements between them about their respective care of the children. Mother maintained the same employment and residence since the prior order. Whereas Father testified he had changed employment three times since the January 2020 order. Father also described that he lived with his girlfriend.

In support of his petition, Father testified about concerns he had regarding the health of the children and how Mother responded to their needs. Although the children had suffered their first seizures before January 2020, Father presented evidence that the treatment in response to the children's condition had changed. Because the children suffered from febrile seizures, he claimed it was important to keep their body temperature below 100.4 degrees when they had a fever. "If you can keep a fever down, then you're fine." He described that conflict had arisen between him and Mother because, he claimed, she believed that over-the-counter medications were "just a way to make the pharmacies more money." Such medicines, he described, were against her holistic view of treating health conditions. Rather, Mother would give the children supplements like "activated charcoal," "sovereign silver," and "fermented tea."[4] He further testified that when he expressed his concerns to Mother, she would tell him that "[he was] the father and [didn't] know anything about the research."

Responding to this testimony, Mother claimed she only gave the children sovereign silver and activated charcoal on one occasion. She claimed she would do extensive research and consult

---

[4] The parties did not define or further describe the supplements being discussed but they seemed to have a mutual understanding of the nature of these products.

with a "Naturopath." She confirmed she gave the children an "immune booster" containing elderberry syrup, high doses of Vitamin C, and Echinacea.

Describing a particular incident, Father testified to a time when he picked the children up from Mother after her summer possession ended. Mother told him the children had been sick with a stomach bug. While in his care, they started throwing up. He described their vomit appeared black with "sandy stuff" in it. Alarmed, Father took them to an emergency room. Father claimed Mother had insisted they only had a stomach bug. Conflict arose as she did not believe they needed to go to a doctor, emergency room, or urgent care center. Mother denied ever giving the children activated charcoal during her summer possession.

Vaccinating the children also became an area of significant conflict.[5] When the children were born, Mother and Father had both agreed to delay vaccinations. When it came time for immunizations, Mother told Father she no longer agreed. Father claimed Mother refused vaccinations multiple times because she claimed they were "against her religion." Mother testified she wanted the children to be tested to determine which vaccines were safe for them and if "they conclude we can vaccinate certain ones, [she] will be on board; [she would] even pay for the testing."

Father also brought up concerns about Mother's use of social media where she posted about her recovery as an addict and her feelings about religion Specifically, Father testified he only had an issue with Mother posting about the children or him personally.

The trial court also heard Father's testimony about Mother's multiple relationships with different men over the course of the prior year. Father testified Mother had dated four or five men,

---

[5] The trial court noted that no party expressed concerns about the children receiving the COVID vaccine. Rather, all references to vaccinations throughout the final hearing concerned basic immunizations commonly required for children to attend school.

who were all introduced to the children. Some of Mother's boyfriends had a criminal history, one of which included a child endangerment charge. Father testified that on one occasion, Mother brought the children with her to meet a boyfriend in a hotel room in Midland and she had sex while the children were present. Mother acknowledged she had engaged in this activity, but she claimed the children had been asleep.

Mother had been dating her most recent boyfriend since the end of January 2021. There was evidence he was a recovering addict, and he was on felony probation for a DWI charge and possession of methamphetamine. Describing her level of commitment to him, Mother testified that, if he should ever relapse, she would stay with him while he recovered. Even so, she clarified she would not allow him to be in her house or be around her children if a relapse occurred.

Father also testified to his concerns that Mother had left the children alone with her ten-year-old nephew. Mother conceded that she left the children with her nephew, but she did so only once for an hour and a half. She also stated her nephew had a cell phone and knew how to call 911. On another occasion, Mother had to take one of the children to the hospital for a nose injury inflicted by the nephew while he had been caring for them. There was also evidence that Mother would leave the children with her brother. Father was concerned because he had been told that Mother's brother touched her inappropriately when they were children. Mother testified the incident with her brother occurred when he was twelve and she was four or five. Mother testified they went to counseling and her brother had never touched her again. Mother also stated her brother had no criminal history.

Mother asserts there was no evidence establishing a material and substantial change because there was no evidence of medical neglect or harm to the children and no testimony had been provided about her dating habits at the time of the prior order. We disagree. Even if the

children's medical issues had existed at the time of the January 2020 order, the trial court was presented with evidence showing that Mother and Father had since been in conflict and unable to agree on the children's medical treatment. Moreover, Father presented other evidence of caretaking concerns during Mother's possession, not present at the time of the January 2020 order, which showed the prior possession schedule had become unworkable.

Viewing the record favorable to the trial court's judgment, as we must, we conclude the trial court had sufficient evidence to support its ruling finding there was a material and substantial change in circumstances warranting a modification of the prior order to the extent modified.

We overrule Mother's first issue.

## B. The geographic restriction on the right to designate the children's primary residence

In her second issue, Mother asserts the trial court abused its discretion in imposing a geographic restriction to Tom Green County. Specifically, Mother asserts two arguments: (1) the geographic restriction does not conform with the parties' pleadings and the issue was not tried by consent; and (2) there was not sufficient evidence to support the imposition of such restriction.

### 1. Trial by consent

First, Mother asserts the trial court's judgment did not conform with the pleadings because there was no request for a geographic restriction to Tom Green County. The trial court's judgment must conform to the pleadings, but if issues not raised by the pleadings are tried by express or implied consent of the parties, the issues will be treated as if they had been raised by the pleadings. *See* TEX. R. CIV. P. 67; *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Neither Mother's nor Father's pleadings included a request to restrict the children's residence to Tom Green County. However, Father made such a request in seeking temporary orders

10

and following a hearing on that request, the trial court appointed Father as primary conservator with the right to designate the children's primary residence restricted to Tom Green County.

On appeal, Mother asserts the issue was not tried by consent. To determine whether an issue was tried by consent, we must review the record not for evidence of the issue per se, but rather for evidence of trial of the issue. *Quiroz v. Gray*, 441 S.W.3d 588, 594 (Tex. App.—El Paso 2014, no pet.). "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). However, an issue is not tried by consent if the evidence relevant to that issue is also relevant to other issues raised by the pleadings. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 446 (Tex. 1993).

Mother asserts the issue was not tried by consent because Father's only request to restrict the children's primary residence was made by Father's counsel during closing argument. But contrasted with this view, our review of the record shows that Mother herself addressed the imposition of a restriction to some extent during her testimony. To start, Mother testified the prior order designated her as the primary conservator with the exclusive right to designate the primary residence of the children without regard to geographic restriction. When she was asked how she wanted the court to rule on things moving forward, she responded, "I want things to go back to the way that they were." Clarifying her answer, counsel asked whether she would be satisfied with "50/50." Mother firmly answered stating, "No, I would not be okay with 50/50." Next, her counsel described: "The prior order didn't have a geographic restriction. Would you ask the Judge to just keep the restriction to the State of Texas?" She responded, "Yes, ma'am. I don't plan on leaving Texas, ever." During Mother's closing argument, her attorney then requested for her to remain the

primary conservator with the right to designate the children's residency without a geographic restriction. Mother's attorney continued: "But in the alternative, Your Honor, if you find it in the children's best interest to put a restriction, we're asking that you give 50/50 visitation and then have that 50/50 visitation lifted when the boys start school and have [Mother] have them predominantly all the time."

On this record, we first note that Mother did not object to the issue being tried; but instead, made her own requests known about the issue. Although Mother made it clear that no restriction was included in the prior order, she nonetheless offered an alternative that itself imposed a geographic restriction to Texas. We conclude that Mother's lack of objection and discussion of the issue permitted the trial court to make a ruling on the issue. For these reasons, we conclude the issue was brought before the trial court and tried by consent. Given that circumstance, we next consider whether there was sufficient evidence to support the trial court's imposition of a geographic restriction to Tom Green County.

### 2. Sufficiency of the evidence

Mother asserts there is insufficient evidence to support the geographic restriction to Tom Green County. Specifically, Mother asserts that although there was evidence developed about each parent's home in the county, their employment, the children's school, and friends and family living in San Angelo, there was limited evidence on what family and opportunities existed elsewhere.

"In considering whether a geographic restriction is in the best interest of the child, the Texas Supreme Court suggested consideration of the following factors: (1) the reasons for and against a prospective move, including the parents' good faith motives in requesting or opposing it; (2) health, education, and leisure opportunities afforded by the prospective move; (3) the degree of economic, emotional, and educational enhancement for the custodial parent and child; (4) the

effect on extended family relationships; (5) accommodation of the child's special needs or talents; (6) the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (7) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (8) the ability of the non-custodial parent to relocate." *Interest of K.S.*, No. 13-19-00416-CV, 2021 WL 317656, at *6 (Tex. App.—Corpus Christi Jan. 28, 2021, no pet.) (mem.op.) (citing *Lenz v. Lenz*, 79 S.W.3d 10, 15-16 (Tex. 2002)).

The trial court heard extensive evidence on the children residing in Tom Green County their entire lives, attending school in the county, receiving medical treatment, and having family in the county. Moreover, there was no evidence presented to the trial court on either party initiating a request to relocate either presently or in the future. The trial court could have found it was in the children's best interest to reside within Tom Green County and for them to spend equal amounts of time with each parent. Based on the evidence presented we cannot say the trial court abused its discretion.

We overrule Mother's second issue.

## C.  The exclusive right to designate the primary residence of the children

Next, Mother's fourth issue asserts the trial court erred in failing to grant either parent the right to designate the primary residence of the children. As the basis for his petition for modification, Father requested the trial court modify the parent-child relationship and appoint him as the conservator with the exclusive right to designate the children's primary residence. The trial court's order did not rule on this request. There is no language appointing either parent as the conservator with the exclusive right to designate the primary residence of the children or any language ordering that neither parent has that right. Section 153.134 of the Texas Family Code

governs "court-ordered joint conservatorship." *See* TEX. FAM. CODE ANN. § 153.134. When a trial court renders an order appointing joint managing conservators, the code states the court shall "designate the conservator who has the exclusive right to determine the primary residence of the child." *See id.* § 153.134(b)(1).

Father asserts, without reference to citation, that because the trial court granted both parties possession of the children on a week-to-week basis, "it was not necessary for the [t]rial [c]ourt to grant either conservator the right to designate a primary residence for the children." Father seems to take the position that the trial court intentionally left out an appointment of the primary conservator, but there was no explicit ruling that neither party have the right. Father continues that "[t]here is no statute or case law that states a court must grant a specific conservator the right to designate the primary residence of a child in a modification suit." Father contends "[o]nly when an Original Suit Affecting the Parent-Child Relationship or Petition to Adjudicate is filed, is it necessary for the court to appoint a conservator with the right to designate the child's primary residence." Father does not support his stance with any citation to authority.

Our review of the record shows Father explicitly requested to be appointed as the conservator with the exclusive right to designate the primary residence of the children. The trial court's order did not make any reference to this issue. The order does state "all relief requested in this case and not expressly granted is denied[,]" and "[a]ll other terms of the prior orders not specifically modified in this order shall remain in full force and effect." We disagree with Mother's assertion that the trial court erred in failing to appoint a conservator with the right to designate the children's primary residence. Here, the trial court did not grant Father's request to be appointed as the conservator with the right to designate the children's primary residence. Instead, it denied all other relief not expressly granted. From this ruling, we must conclude the prior order's

14

appointment of Mother as the conservator with the exclusive right to designate the children's primary residence remains in place. Although the trial court entered specific orders addressing each conservator's rights to make medical and educational decisions, Mother remains the conservator with the exclusive right to designate the primary residence of the children as restricted to Tom Green County. *See In Interest of W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *3 (Tex. App.— Dallas July 17, 2018, no pet.) (mem.op.) ("Designating a primary residence is necessary for two reasons: to determine residency for purposes of public school enrollment and as a significant factor in the power of relocation."); *In re Cole*, No. 03-14-00458-CV, 2014 WL 3893055, at *3 (Tex. App.—Austin Aug. 8, 2014, no pet.) (mem. op.) (holding a trial court's decision to enter specific orders on the children's school attendance did not have the effect of changing the designation of the person with the exclusive right to designate the children's primary residence).

We overrule Mother's final issue.

## D.     The exclusive right to make medical decisions

Finally, Mother's third issue contends the trial court erred in removing her as the conservator with the exclusive right to make invasive medical decisions and to consent to psychiatric and psychological treatment of the children.

In the January 2020 order, Mother was designated as the conservator with "the right to consent to medical, dental, and surgical treatment involving invasive procedures[,]" and "the right to consent to psychiatric and psychological treatment[.]" As a modification of the prior order, the trial court made specific findings and orders regarding each parent's right to make medical decisions for the children, including ordering them to defer to the recommendations of the children's pediatrician, Dr. Karl Wehner, M.D., unless they agree in writing to do otherwise. The

15

trial court also entered orders regarding immunizations of the children, requiring Mother and Father to follow the recommendation of the pediatrician unless they agreed otherwise in writing. Also, the trial court made orders involving the children's medical appointments which included the parents consulting each other and giving each other the opportunity to attend scheduled appointments.

Mother complains there was no evidence to support the trial court's "radical move of taking medical decisions away from [Mother] and placing them in the hands of a third-party doctor in the event of disagreement between the parents." First, she asserts Father did not plead for modification of Mother's exclusive right to consent to invasive medical or psychological procedures for the children. Second, she argues the issue was not tried by consent.

Our review of the record shows the subject of the children's health, and the parties' constant disagreements about their healthcare, was extensively discussed during the trial. Mother asserts the only explicit request by Father to be appointed as the conservator with the exclusive right to make medical decisions was during his closing argument on rebuttal. However, Father did testify he was requesting the court order that he make all medical decisions regarding the children. Additionally, Mother made it clear that she wanted to remain as the conservator designated as having the exclusive right to consent to invasive procedures and psychological treatment. On review, we conclude that Mother did not object to the issue being tried but rather she argued against Father's requests. For this reason, we find the issue was properly before the trial court.

Mother secondly argues there was no evidence to support allegations of medical neglect. However, the trial court did not make a finding of medical neglect. Rather, the trial court found that Mother and Father were "diametrically opposed with regard to their thoughts and beliefs regarding most aspects of the medical care of the children." Furthermore, the trial court found the

16

evidence was insufficient to support a decision that one parent would make better medical decisions for the children than the other. The trial court determined it could not arbitrarily substitute its judgment for that of the parents or the pediatrician. Instead, the trial court found that each parent had testified they participated in choosing the named pediatrician and they both testified they trusted this physician. There was sufficient evidence to support the trial court's finding that the parties could not agree on decisions when it came to the children's medical care and treatment.

Based on the above evidence, we conclude the trial court did not act in an arbitrary manner or without reference to any guiding principles in granting both parents the equal right to make medical decisions when they agreed. Otherwise, when conflict ensued, they were ordered to follow the recommendation of the pediatrician they had both approved. The trial court had sufficient information upon which to exercise its discretion and did not err in its application of that discretion.

Accordingly, we overrule Mother's third issue.

## IV.  CONCLUSION

Having overruled all issues, we affirm the trial court's final order rendered in a suit to modify the parent-child relationship.

GINA M. PALAFOX, Justice

March 30, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

17